# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD OEFFNER,<br><br>                      Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>                    Defendant. | CASE NO. 10cv1851-BEN (MDD)<br><br>REPORT AND RECOMMENDATION THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED AND THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED.<br><br>[Doc. Nos. 13 & 17] |

**I.**     **Introduction**

On September 3, 2010, Richard Oeffner ("Plaintiff") filed an action pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security Disability Insurance Benefits ("SSDI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. Plaintiff filed the instant Motion for Summary Judgment, challenging the determination by Administrative Law Judge Eve B. Godfrey ("ALJ") that he is not disabled. (Doc. No. 13). In his Motion, Plaintiff asserts that the ALJ's decision was not supported by substantial evidence, and therefore her decision denying him benefits should be reversed. Id. Defendants filed the instant Cross-Motion for Summary Judgment, asserting that the ALJ's decision was proper. (Doc. No. 17)

Plaintiff's applications for SSDI and Supplemental Security Income were denied initially and on reconsideration. On November 10, 2009, the ALJ conducted a hearing on the matter, and on December 18, 2009, issued a decision finding that Plaintiff was not disabled.

**II.     Factual Background**

Plaintiff was born in 1963. (A.R. at 125). Plaintiff obtained a Bachelor of Science degree and completed some course work for a Master's degree. (A.R. at 452). In 1996, Plaintiff was diagnosed with atrial fibrillation. (A.R. at 240). At the time, he weighed over 450 pounds. (A.R. at 240). In 2005, Plaintiff complained of heart palpitations, a symptom of atrial fibrillation. (A.R. at 246-55). Plaintiff's atrial fibrillation was brought under control by October 2006. (A.R. at 300-01). Plaintiff worked as a microbiologist until 2006, until he was terminated for failing a drug test. (A.R. at 35-36). Plaintiff was hospitalized in August, 2007, for left leg swelling, though the swelling decreased in a few days. (A.R. at 306-309). Plaintiff continued to see a doctor after this incident, but the examinations did not reveal any remarkable conditions other than an irregular heartbeat. (A.R. at 333-34, 349, 366, 373). At the hearing before the ALJ, Plaintiff testified that he is unable to work due to his morbid obesity and atrial fibrillation. (A.R. at 20).

**III.    Legal Standard**

The supplemental security income program established by Title XVI of the Act provides benefits to disabled persons without substantial resources and little income. 42 U.S.C. § 1383. To qualify, a claimant must establish an inability to engage in "substantial gainful activity" because of a "medically determinable physical or mental impairment" that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A). The disabling impairment must be so severe that, considering age, education, and work experience, the claimant cannot engage is any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 1382(a)(3)(B).

The Commissioner makes this assessment through a five-step analysis. First, the claimant must currently be not working. 20 C.F.R. § 416.920(b). Second, the claimant must have a "severe" impairment. 20 C.F.R. § 416.920(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude

work. 20 C.F.R. § 416.920(d). If the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. 20 C.F.R. § 416.920(d). Fourth, if the claimant can do his past work, benefits are denied. 20 C.F.R. § 416.920(e). Fifth, if the claimant cannot do his past work and, considering the claimant's age, education, work experience, and residual functional capacity, cannot do other work that exists in the national economy, benefits are awarded. 20 C.F.R. § 416.920(f). The last two steps of the analysis are required by statute. 42 U.S.C. § 1382(a)(3)(B).

In addition, when evaluating the severity of a claimant's alleged mental impairments, the Commissioner uses a "special technique" at each level of the review process. 20 C.F.R. § 416.1520a. In order to be considered disabled under the Act, the claimant must have: (1) a medically determinable mental impairment(s), 20 C.F.R. § 416.1520a(b)(1)[4], and (2) exhibit specified functional limitations as a result of that impairment(s) that prohibit the claimant from engaging in any gainful activity. 20 C.F.R. § 416.1520a(b)(2). If the claimant has a medically determinable mental impairment but does <u>not</u> exhibit the requisite functional limitations, the claimant may nevertheless still be considered disabled if the claimant exhibits clusters of symptoms or a syndrome that indicate the inability to engage in gainful activity. 20 C.F.R. § 404.1520a(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.A. (impairment(s) must either pose functional limitations or cause symptoms or a syndrome to support a finding of disabled).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3), 405(g). The scope of judicial review is limited, however, and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433(9th Cir. 1988) (quoting <u>Green v. Heckler</u>, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance. <u>Sandqathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). "[I]t is such relevant evidence as a

---

[4]There are nine diagnostic categories that the Act considers to be medically determinable mental impairment(s): Organic mental disorders (12.02); schizophrenic, paranoid, and other psychotic disorders (12.03); affective disorders (12.04); mental retardation (12.05); anxiety related disorders (12.06); somatoform disorders (12.07); personality disorders (12.08); substance addiction disorders (12.09); and autistic disorder and other pervasive developmental disorders (12.10). 20 C.F.R.Pt. 404, Subpt. P, App. 1 § 12.00.A.

reasonable mind might accept as adequate to support a conclusion." Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576, (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. Id. (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983)).

Even if the reviewing courts finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. Id.

**IV.  Discussion**

    **A.  The ALJ's Determination that Sleep Apnea and Lower Extremity Edema Did Not Constitute Legally Severe Impairments**

Plaintiff contends that the ALJ erred by failing to find that his sleep apnea and lower extremity edema constitute legally severe impairments. (Doc. No. 13). Plaintiff states that the ALJ misconstrued the record when she found that although Plaintiff suffers from sleep apnea, his use of a CPAP machine had alleviated the condition. Id. Furthermore, Plaintiff contends that though the ALJ found that Plaintiff's venous insufficiency, the cause of Plaintiff's lower extremity edema, was a severe impairment, she failed to incorporate the limiting effects of venous

1  insufficiency into the residual functional capacity finding. Id. Plaintiff asserts that the ALJ's
2  failure to define the precise limiting effects of Plaintiff's venous insufficiency constitutes error and
3  requires remand or reversal. (Doc. No. 13 at 11-12).

4  Defendants, in their Motion, contend that even if Plaintiff is correct that the ALJ failed to
5  identify sleep apnea or lower extremity edema as severe, such a mistake would be inconsequential.
6  (Doc. No. 17). Defendant states that Plaintiff mischaractizes Step Two of the proceedings. Id. So
7  long as the ALJ identifies at least one impairment as severe, the ALJ will consider the functional
8  effect of all impairments, severe and non-severe. Id. Defendants contend that because the ALJ
9  found that at least one of Plaintiff's impairments was severe, she moved on to Step Three of the
10 analysis where she properly considered the functional effect of all of Plaintiff's conditions,
11 including his sleep apnea and lower extremity edema. Id. Thus, Defendants contend that even if
12 the ALJ erred at Step Two, this error was harmless. Id.

13 As described above, the purpose of Step Two is to determine the existence of at least one
14 severe impairment. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose of Step
15 Two is not to identify each and every severe impairment a claimant may be suffering. Rather, the
16 "step-two inquiry is a de minimis screening device to dispose of groundless claims." Id.

17 An impairment is only considered non-severe if it does not significantly limit one's
18 physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521.

19 Here, the ALJ found Plaintiff's extreme morbid obesity, atrial fibrillation, and venous
20 insufficiency to be severe impairments. (A.R. at 18). These findings satisfied Step Two, and the
21 ALJ properly moved on to Step Three. Id. Thus, even if the ALJ erred by not listing sleep apnea
22 or venous insufficiency as severe impairments at this stage, such an error would be harmless.

23 Plaintiff's argument that the ALJ failed to properly consider the limitations imposed by
24 Plaintiff's Sleep Apnea and Venous insufficiency is not a proper objection to the ALJ's findings at
25 Step Two. Rather, Plaintiff's contention that the ALJ failed to consider the limitations of these
26 conditions is more properly brought as a challenge to the ALJ's RFC determination, and is
27 discussed below.
28 ///

### B. The ALJ's Rejection of Dr. Kramer's Opinion.

Plaintiff also contends that the ALJ erred when she rejected the opinion of Dr. Kramer. (Doc. No. 13). Defendants, in their Motion, contend that the ALJ acted properly when she rejected the opinion of Dr. Kramer, and relied instead on the opinion of the testifying medical expert, Dr. Morse. (Doc. No. 17).

Plaintiff acknowledges that the ALJ gave three reasons for rejecting Dr. Kramer's opinion, and contends that those reasons were: (1) Dr. Kramer only examined Plaintiff once, (2) his opinion appeared to be based solely on a review of the treating records, and (3) that Dr. Kramer was selected by Plaintiff's counsel and therefore "probably biased." Id. However, Plaintiff contends that these rationale are insufficient to discredit Dr. Kramer's opinion given that Dr. Kramer was the only physician to physically examine Plaintiff. Id.

Defendants, on the other hand, interpret the ALJ's reasons for rejecting Dr. Kramer's opinion as being: (1) Dr. Kramer's opinion was conclusory and brief, (2) Dr. Kramer's findings during his examination did not support his conclusions, and (3) his opinion conflicted with Dr. Morse's testimony, as well as the opinions of Dr. Vu and Dr. Paxton, who had also reviewed Plaintiff's record. (Doc. No. 17).

Both sides address some, but not all of the ALJ's rationale for rejecting Dr. Kramer's opinion. In section five of the ALJ's findings, she notes that she "cannot give significant weight, if any, to Dr. Kramer's opinion since [his] opinion is brief, conclusory, possibly biased, and inadequately supported by clinical findings." (A.R. at 22). The ALJ also notes that Dr. Kramer's opinion is contradicted by "his own objective findings" and by "the opinions of the State Agency physicians and Dr. Morse, as well as objective medical findings in the CVFC Family Practice records." Id. Plaintiff asserts that the ALJ's error in rejecting Dr. Kramer's opinion lead to the ALJ's erroneous conclusion that Plaintiff is capable of the full range of extertionally sedentary work and therefore not disabled. Id. Defendants contend that the ALJ's decision to reject Dr. Kramer's opinion was supported by substantial evidence, and therefore the ALJ's determination that Plaintiff was not disabled is likewise proper.

///

Plaintiff is correct that the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). However, the fact that one physician examined the claimant does not mean that his opinion is dispositive. See id. Rather, the Commissioner must provide "clear and convincing" reasons for rejecting the opinion of an examining physician, if that opinion is uncontradicted. Id. If contradicted by another doctor, the opinion of an examining physician can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. Id. at 832.

Here, the ALJ provided several legitimate reasons for rejected Dr. Kramer's opinion. While Plaintiff is correct that any one of these factors by themselves may be an inadequate basis for rejecting Dr. Kramer's opinion, taken together they are a sufficient bases for rejecting his opinion, and are supported by substantial evidence on the record.

### 1.  Dr. Kramer's opinion was brief and conclusory.

First, the ALJ noted that Dr. Kramer only examined the Plaintiff once, and that this examination was "unremarkable." (A.R. at 22). Plaintiff contends that even if Dr. Kramer only examined Plaintiff once, Dr. Kramer was the only doctor to examine Plaintiff at all, and thus rejecting his opinion in favor of doctors who did not examine Plaintiff at all is not permissible. (Doc. No. 13). Furthermore, Plaintiff contends that Dr. Kramer's examination cannot be considered "unremarkable" given that Dr. Kramer's examination of Plaintiff revealed

> evidence of an extremely antalgic and slow gait with use of a cane; shortness of breath on walking; elevated blood pressure at 180/90; an irregularly irregular pulse; bilateral stasis dermatitis involving the lower half of the forelegs; much pain on palpation of the paralumbar muscles; marked limitation of motion at the waist; 3+ brawny and pitting edema in the pretibial and ankle regions; and bilateral varicosities."

(Doc. No. 13) (citing A.R. at 461-462). As stated above, the ALJ may reject these findings so long as she provides specific and legitimate reasons for rejecting them, and those reasons are supported by substantial evidence on the record. In Batson v. Commissioner of Soc. Sec. Admin, 359 F.3d 1190 (9th Cir. 2004), the Ninth Circuit noted that in a social security disability proceeding, an ALJ may discredit a treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.

1    Here, whether or not these findings are "remarkable," they were not discounted by the
2 ALJ.  Rather, she explicitly considered these findings, but found that they were ameliorated or
3 refuted by other evidence on the record, noting that in addition to the findings noted by Plaintiff in
4 his Motion, "Dr. Kramer's own exam showed the claimant's lungs were clear to auscultation, his
5 heart rate was regular with no murmurs, gallops or rubs, there was over the lumbosacral spine
6 region with associated marked limitation of motion at the waist, mentation was normal,
7 coordination was grossly normal, and cranial nerves II through XII were grossly intact." (A.R.
8 22).  Considering all these findings, the ALJ then determined that the findings conflict with Dr.
9 Kramer's ultimate conclusion of total disability, as well as the opinions of the State Agency
10 physicians, Dr. Morse, and the objective medical finds in the CVFC records.  Id.  Thus, Plaintiff's
11 assertion that the ALJ discounted Dr. Kramer's opinion simply because it was "unremarkable" is
12 misleading.  The ALJ considered Dr. Kramer's findings, but found that Dr. Kramer's conclusions
13 conflicted with the bulk of the medical record, and that these conclusions were not supported by
14 Dr. Kramer's own observations.  See id.  Dr. Kramer's report lacked a thorough analysis that
15 would explain how he arrived at his conclusion in light of his observations, and thus the ALJ was
16 within her discretion to discredit it.  See Batson, 359 F.3d at 1190

17    Furthermore, Defendant correctly notes that many of Dr. Kramer's opinions are not entitled
18 to any deference to begin with.  Under 20 C.F.R. § 404.1527(e), opinions on issues reserved to the
19 Commission are not considered medical opinions at all, and are not entitled to any special
20 significance.  20 C.F.R. § 404.1527(e)(3).  Specifically, opinions that the patient is disabled or
21 unable to work are legal conclusions and thus not given any special weight by the Commissioner.
22 20 C.F.R. § 404.1527(e)(3)(1).  Here, Dr. Kramer stated that Plaintiff was "totally disabled" and
23 "unable to engage in any substantial gainful employment."  (A.R. at 462).  These opinions are on
24 matters reserved to the commissioner and are not entitled to any special significance.  20 C.F.R. §
25 404.1527(e).  Thus, the ALJ's assertion that Dr. Kramer's opinion is conclusory was a legitimate
26 and specific reason for rejecting Dr. Kramer's opinion.
27 / / /
28 / / /

2. **Dr. Kramer's opinion was possibly biased.**

Second, the ALJ noted that Dr. Kramer was selected by Plaintiff, and paid by Plaintiff's mother, and that, as a result, his opinion was possibly biased. (A.R. at 22). Plaintiff contends that it is improper for an ALJ to reject a doctor's opinion based on the source of the doctor's fee. (Doc. No. 13). Defendant counters that the ALJ may properly question a doctor's credibility when the validity of that opinion has been called into question by other evidence in the record. (Doc. No. 17).

Plaintiff cites <u>Batson</u>, 359 F.3d at 1195 (9th Cir. 2004) in support of the proposition that a doctor's opinion cannot be rejected based on the source of the doctor's fee or the fact that the doctor was selected by a plaintiff or plaintiff's counsel. In <u>Batson</u>, though the court ultimately upheld the ALJ's determination that the plaintiff was not disabled, the Court noted that "we have held that 'the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." <u>Id.</u> at 1195, fn 5 (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).

Defendants contend that despite the court's holding in <u>Lester</u> and <u>Batson</u>, the ALJ acted properly in this case by rejecting Dr. Kramer's opinion. In <u>Saelee v. Chater</u>, 94 F.3d 520, 522-23 (9th Cir. 1996), the Ninth Circuit upheld an ALJ's rejection of a doctor's opinion when the ALJ listed the fact that the doctor's opinion was solicited by the claimant's council as one of the reasons for rejection. The Ninth Circuit stressed that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." <u>Id.</u> (internal citations omitted). Furthermore, the Ninth Circuit noted that "[a]lthough in <u>Lester v. Chater</u>, we stated that [t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them, we also have permitted an ALJ to question a doctor's credibility because, as here, the doctor's opinion letter had been solicited by the claimant's counsel." (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335 (9th Cir.1988)). The court further distinguished <u>Saelee</u> from <u>Lester</u>, by noting that when the ALJ has other reasons for calling a doctor's opinion into question, such as when it conflicts with other evidence on record, the source of the doctor's fee becomes a legitimate consideration in the ALJ's credibility determination. <u>Id.</u> at 522.

Here, as in <u>Saelee</u>, the ALJ properly exercised her discretion to determine that Dr.

Kramer's opinion was not credible. The ALJ provided several valid bases for calling Dr. Kramer's opinion into question, including that it conflicting with the bulk of the medical evidence on record and did not appear to be supported by his own examinations. (A.R. at 21-22). Thus, the ALJ was able to take the source of Dr. Kramer's fee and the fact that Dr. Kramer had been selected by Plaintiff's counsel into consideration. Saelee, 94 F.3d at 522. Ultimately, the ALJ determined that bias possibly influenced the outcome. (A.R. at 22). This is a permissible credibility determination within the ALJ's discretion, and a valid reason for rejecting Dr. Kramer's opinion. Saelee, 94 F.3d at 522.

### 3. Dr. Kramer's opinion is not supported by his own findings, and is contradicted by the bulk of the medical evidence

While the ALJ gives many reasons for rejecting Dr. Kramer's opinion, she stresses that the primary reason is that Dr. Kramer's opinion is not supported by his own findings and contradicts the great bulk of the medial record.

An ALJ is instructed to consider how consistent a medical opinion is with the other evidence on record. 20 C.F.R. 404.1527(d)(4); 416.927(d)(4). The ALJ is the final arbiter with respect to ambiguities in the medical record. Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir. 2008). Furthermore, "[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). "Courts have consistently upheld the Commissoner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor." Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 602 (9th Cir. 1999). Here, in addition to Dr. Kramer's opinion, the ALJ considered the opinions of Dr. Morse and the State Agency physicians, as well as the objective medical findings in the CVFC Family Practice Records. (A.R. at 22). The ALJ found that Dr. Kramer's conclusions were contradicted by all of the above sources, including Dr. Kramer's own examination notes. Id. Thus, the ALJ had a duty to resolve this conflict. Tommasetti, 533 F.3d at 1041-42. The ALJ found that despite the deference initially given to Dr. Kramer's opinion, Dr. Kramer's opinions were ill-founded and erroneous. (A.R. at 22). Dr.

Kramer's conclusion that Plaintiff was totally incapacitated was at odds with the findings that Plaintiff had a full range of painless motion, that many of his impairments were controlled or controllable with medication, and that Plaintiff was not in distress. (A.R. at 300-01, 333-34, 337, 348-49, 366, 373, 388). It was also at odds with the testimony of Dr. Morse, and the opinions of Drs. Vu and Paxton, who had both reviewed Plaintiff's medical records. (A.R. at 22-23). These opinions are substantial evidence that Dr. Kramer's opinion was erroneous. Thomas, 278 F.3d at 957. Accordingly, the ALJ's assertion that Dr. Kramer's opinion was contradicted by the medical evidence on record and the opinions of the state agency physicians was a valid reason for rejecting Dr. Kramer's ultimate conclusion of total disability. Id.; 20 C.F.R. 404.1527(d)(4); 416.927(d)(4).

In conclusion, the ALJ provided numerous specific and legitimate reasons for rejecting Dr. Kramer's opinion, and those opinions are supported by substantial evidence in the record. Lester, 81 F.3d at 831.[5]

### C. The ALJ's Residual Functional Capacity Determination

Plaintiff contends that because the ALJ improperly rejected Dr. Kramer's opinion, her ultimate residual functional capacity determination lacked the support of substantial evidence. (Doc. No. 13). Furthermore, Plaintiff contends that the ALJ erred by failing to consider the effect of Plaintiff's sleep apnea and venous insufficiency. Id. Defendants contend that because the ALJ properly rejected Dr. Kramer's opinion and relied on the opinions of Dr. Morse and the state agency physicians, her RFC finding was proper. (Doc. No. 17).

At Step Three, the ALJ considers the functional effect of all of the claimant's impairments, both severe and non-severe. "The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Tommasetti, 533 F.3d at 1041-42. A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and his

---

[5] Furthermore, even if any of the above reasons were improper, this would not necessitate rejecting the ALJ's opinion. While the Court affirms that all of the above were valid reasons for rejecting Dr. Kramer's opinion, even if one or more of the above reasons were improper, the ALJ's rejection would still be proper so long as one of the above reasons is deemed proper. Batson, 359 F.3d 1197.

decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Substantial evidence has been defined as "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec., 554 F.3d 1219, 1222 (9th Cir. 2009). In other words, substantial evidence must consist of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The ALJ determined that Plaintiff's RFC was as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except: no climbing ladder/rope/scaffolds; no more than occasional climbing ramp/stairs, balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to dust, fumes, odors, etc.; and avoid concentrated exposure to hazard.

(A.R. at 20) (emphasis omitted). In reaching this decision, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (A.R. at 20). The ALJ also considered opinion evidence. Id. Ultimately, the ALJ agreed with the conclusion of the impartial medical expert, Dr. Morse, that Plaintiff could perform sedentary work with the restrictions listed above. Id. at 21. The ALJ also noted that her opinion is supported by the opinions of the state agency physicians and the objective medical evidence on record. Id. Though the ALJ rejected Dr. Kramer's conclusion of total disability, as discussed above, this does not constitute error.

In his Motion, Plaintiff contends that the ALJ erred in her RFC finding when she failed to take into account his sleep apnea and the swelling in his lower legs, a condition that requires that he keep his feet elevated for six hours a day and which prevents Plaintiff from engaging in any competitive employment. (Doc. No. 13). Plaintiff also contends that even though the ALJ acknowledged that Plaintiff's venous insufficiency is a legally severe impairment, she erred by failing to define the precise limiting effects of the impairment. Id.

Defendant, in his Motion, contends that the ALJ properly evaluated the medical evidence and reached the correct RFC finding. (Doc. No. 17).

First, the ALJ did consider Plaintiff's sleep apnea. The ALJ specifically noted that "there

1 is very little mention of this as a problem in the record. In any event, [Plaintiff] received a CPAP
2 machine for sleep apnea on June 22, 2009, and by June 29,2009, he was sleeping better and feeling
3 more rested (Exhibits 16F/37 and 17F)." (A.R. at 21). Plaintiff contends that this misconstrues
4 the record because Plaintiff no longer uses the CPAP machine. (Doc. No. 13) (citing A.R. 499-
5 501). While Plaintiff admits that he stated the CPAP machine was improving his sleep (A.R. 499-
6 501), he now contends that he had only been using the machine for one week when he answered
7 the questionnaire, and that he stopped using the CPAP afterwards because it was uncomfortable.
8 (Doc. No. 13). Furthermore, Plaintiff states there are numerous references to his sleep difficulties
9 throughout the record. Id. Defendant counters that nevertheless, Plaintiff's sleep apnea was
10 amenable to control with the CPAP machine, and thus it is not a severe impairment. (Doc. No.
11 17).

12     As for Plaintiff's contention that his sleep apnea was improperly and summarily dismissed
13 from consideration, it is incorrect. Regardless of the ALJ's statement that sleep apnea was rarely
14 mentioned, the ALJ heavily relied on the opinion of Dr. Morse in reaching her RFC finding. (A.R.
15 at 21-23). Dr. Morse considered both Plaintiff's sleep apnea and his venous insufficiency when he
16 testified before the ALJ. (A.R. at 32). Dr. Morse recognized Plaintiff's sleep apnea, which he
17 found "unsurprising due to [Plaintiff's] obesity. (A.R. at 32). Further, the ALJ properly took into
18 account the fact that Plaintiff's sleep apnea was amenable to control. While Plaintiff testified that
19 he has difficulty "getting used to" the CPAP machine, it is not apparent from the record that he has
20 ceased to use it or that it is no longer effective. (A.R. at 40). Even if Plaintiff's sleep apnea was
21 completely untreated, it would not undermine the ALJ's RFC decision. The ALJ acknowledged
22 Plaintiff's sleep apnea, but deferred to the opinion of Dr. Morse as to its effect on Plaintiff. (A.R.
23 at 29-22). Because the ALJ's conclusion was based on substantial evidence in the record, the
24 Court should affirm. Bayliss, 427 F.3d at 1217; Thomas, 278 F.3d at 957.

25     Second, Plaintiff contends that the testifying medical expert testified that Plaintiff's
26 impairments required him to elevate his legs for six hours in an eight hour day, and that the
27 vocational expert testified that Plaintiff would be unable to perform any work due to this
28

1  requirement. (Doc. No. 13). Defendants counter that the ALJ properly considered all of the
2  medical evidence and ultimately based on her RFC finding on Dr. Morse's opinion, and that this
3  finding is consistent with the objective medical evidence on record. (Doc. No. 17).

4  Here, as with Plaintiff's sleep apnea, Plaintiff's venous insufficiency was specifically
5  considered by Dr. Morse. (A.R. at 32). When asked which of Plaintiff's impairments were severe,
6  Dr. Morse stated "the combination of [Plaintiff's] obesity, his venous insufficiency and his chronic
7  atrial fibrillation[.]" Id.. Dr. Morse stated that even considering this condition, Plaintiff can sit for
8  six hours. Id. at 33. Furthermore, Dr. Morse stated that his findings took into account Plaintiff's
9  need to elevate his legs. Id. While Plaintiff is correct that there is evidence on the record that
10 Plaintiff's need to elevate his legs would preclude employment, it is contradicted by Dr. Morse's
11 testimony. The ALJ is responsible for resolving this ambiguity.

12 So long as the ALJ applied the correct standard and her opinion is supported by substantial
13 evidence, the court should affirm. Bayliss, 427 F.3d at 1217. Here, Dr. Morse's testimony, as
14 well as the evaluations by the state agency physicians and the objective medical evidence on
15 record, constitute substantial evidence that support the ALJ's findings. While there may be some
16 evidence to the contrary, it is the duty of the ALJ to weigh any conflict and resolve any
17 ambiguities. Tommasetti, 533 F.3d at 1041-42. Accordingly, the Court affirms the ALJ's RFC
18 determination. Bayliss, 427 F.3d at 1217; Thomas, 278 F.3d at 957.

19 **IV.   Conclusion**

20 It is recommended that Plaintiff's Motion for Summary Judgment be **DENIED** and
21 Defendant's Cross-Motion for Summary Judgment be **GRANTED.**

22 This Report and Recommendation of the undersigned Magistrate Judge is submitted to the
23 United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §
24 636(b)(1).

25 **IT IS HEREBY ORDERED** that any written objection to this REPORT must be filed
26 with the Court and served on all parties no later than **July 27, 2011**. The document should be
27 captioned "Objections to Report and Recommendations.

28

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 10, 2011**. The parties are advised that failure to file objections within the specific time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: July 6, 2011

Hon. Mitchell D. Dembin
U.S. Magistrate Judge